IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Paul A.,[1]

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security

                Defendant.

No. 3:17-cv-01792-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff Paul A. brings this action for judicial review of the Commissioner of Social Security's decision denying his applications for Supplemental Security Income and Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff filed his applications for Supplemental Security Income and Disability Insurance Benefits on August 19, 2013. In both applications, Plaintiff alleged disability beginning on October 1, 2007. After a hearing, an Administrative Law Judge determined that Plaintiff was not disabled under the Social Security Act. Plaintiff now contends that the ALJ erred in (1) rejecting portions of his subjective symptom testimony, (2) discounting portions of the medical opinion testimony of examining psychologist Cheryl Brischetto, and (3) discounting portions of the lay opinion testimony of social worker Heather Germundson and employment support specialist Carolyn Frank. Because the Commissioner of Social Security's decision is based on proper legal standards and supported by substantial evidence, it is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in the case.

Page 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

A reviewing court shall affirm the decision of the Commissioner of Social Security ("Commissioner") if her decision is based upon proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the Administrative Law Judge ("ALJ"). *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the ALJ found that Plaintiff was not disabled. He first determined that Plaintiff remained insured for Disability Insurance Benefits ("DIB") until December 31, 2009, but summarily denied Plaintiff's DIB application because there was "insufficient evidence to assess

the claimant's functioning prior to the date last insured." Tr. 17.[2] Next, at step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2007, the alleged onset date of disability. Tr. 13. At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder; unspecified neurodevelopmental disorder; and social anxiety disorder. Tr. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14.

Before moving to step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. Tr. 16. Specifically, the ALJ found that Plaintiff was limited to superficial public and coworker contact, unskilled work, and no more than occasional supervisory contact. Tr. 16. At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 22. Nevertheless, at step five, the ALJ found that Plaintiff could perform several jobs existing in substantial numbers in the national economy. Tr. 23. In so finding, he relied on the testimony of a vocational expert and considered Plaintiff's age, education, work experience, and RFC. Tr. 23. Finally, having identified jobs existing in substantial numbers in the national economy which Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled and therefore did not qualify for benefits. Tr. 23.

Plaintiff challenges the ALJ's non-disability determination on three grounds. First, he argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting his symptom testimony. Pl.'s Br. 4-8. Second, he argues that the ALJ improperly discounted portions of the medical opinion testimony of examining psychologist Cheryl Brischetto. Pl.'s Br. 8-11. Finally, Plaintiff argues that the ALJ improperly discounted

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Page 3 –OPINION AND ORDER

portions of the lay opinion testimony of social worker Heather Germundson and employment support specialist Carolyn Frank. Pl.'s Br. 11-15. The Court addresses each objection in turn.

I. **Subjective Symptom Testimony**.

Plaintiff first argues that the ALJ failed to provide clear and convincing reasons for discounting his symptom testimony. Plaintiff testified that his mental impairments prevent him from interacting with others, tr. 53, 234-40, give rise to manic episodes during which he has "no control" over his emotions, tr. 234-40, and result in periods of depression characterized by lack of concentration, motivation, and recall, tr. 49, 53, 234-40. He further testified that the frequency and intensity of his manic episodes and depressive periods are positively correlated with increased work demands. Tr. 48. The ALJ accepted that Plaintiff's impairments could "reasonably be expected to cause some of the alleged symptoms," but concluded that his statements "concerning the intensity, persistence[,] and limiting effects of these symptoms" were not supported by the record. Tr. 17. In particular, he reasoned that Plaintiff's activities of daily living, medical records, and treatment history were inconsistent with the alleged frequency and intensity of his manic and depressive symptoms, as well as at odds with the alleged intensity of his social anxiety. Tr. 18-19.

An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ, however, is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). In assessing credibility, the ALJ "may consider a range of factors." *Ghanim v. Colvin*, 763 F.3d 11554, 1163 (9th Cir. 2014). These factors include "ordinary techniques of credibility evaluation," as well as a plaintiff's daily activities, objective medical

evidence, treatment history, and inconsistencies in testimony. *Id*. An ALJ may also consider the effectiveness of a course of treatment and any failure to seek further treatment. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996); *Molina*, 674 F.3d at 1113.

Here, the ALJ offered clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

First, the ALJ rejected Plaintiff's claims of debilitating mania, depression, and anxiety based on his activities of daily living. Tr. 19-21. An ALJ may properly reject symptom testimony if a plaintiff's daily activities contradict that testimony or indicate skills and capabilities which are transferable to a work setting. *Ghanim*, 763 F.3d at 1165 (citations omitted). The ALJ noted that Plaintiff's "ongoing college activity," 20-hour-per-week "job as a sales associate" at Office Depot, and ability to juggle school work, counseling appointments, job applications, and job interviews was "inconsistent with a disabling mental condition" and indicative of transferable social skills. Tr. 19. He reasoned that, contrary to Plaintiff's alleged inability to interact with others, Plaintiff's work as a sales associate required "some interaction with customers." Tr. 19. He also reasoned that Plaintiff's ability to manage work and school commitments totaling 35 hours per week was inconsistent with Plaintiff's claim that full-time work would trigger or exacerbate his manic-depressive episodes. Tr. 19; *see also* tr. 20-21. The fact that Plaintiff consistently received academic and vocational support, while potentially allowing for a different interpretation of the evidence, does not render the ALJ's interpretation unreasonable; instead, Plaintiff's ability to complete an associate degree, hold a part-time sales position, and balance other day-to-day obligations still amounted to substantial evidence in support of the ALJ's reasoning.

Second, the ALJ rejected Plaintiff's claims of debilitating mania, depression, and anxiety based on his medical records. Tr. 18-19. Although an ALJ may not disregard subjective complaints

*solely* because they are not "corroborated by objective medical evidence, . . . medical evidence is still a relevant factor" in assessing the severity and limiting effects of a plaintiff's alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that Plaintiff's affective and anxiety disorders were both "controlled with medication"—as corroborated by his school and work activities—and that any periods of "exacerbated symptoms" were primarily the result of medication noncompliance and overconsumption of caffeine. Tr. 18-19. He further opined that, "[w]hile claimant has some cognitive and social limitations, for instance as shown by the need with assistance for interviewing, he is otherwise cognitively intact and able to complete basic interactions with providers." Tr. 18. The ALJ's citations bear out these observations. Plaintiff's counseling notes, for instance, reflect that his bipolar disorder was relatively stable, *see, e.g.*, tr. 332, 360, 552-53, 757-58, 817, and that his residual mania and depression, despite presenting some obstacles, *see, e.g.*, tr. 379-84, 552, 694, 696, 740, 757-58, 907, were generally manageable, *see, e.g.*, tr. 578, 598, 617, 801, 933, 943-44, and actually improved after starting part-time work, tr. 933, 943, 1099. Although Plaintiff experienced several longer episodes of acute mania, tr. 358, 402, 816, 1066, most were associated with medication noncompliance, tr. 822, 1066, or the use of caffeine-rich supplements, tr. 402. Taken together, Plaintiff's treatment records, in combination with his listed daily activities, constituted substantial evidence in support of the ALJ's finding.

Finally, the ALJ rejected Plaintiff's claims of debilitating mania, depression, and anxiety based on the frequency and nature of his treatment. Tr. 17-18. Although an ALJ may properly reject a plaintiff's symptom testimony based on "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment," *Molina*, 674 F.3d at 1113, the ALJ here failed to support his reasoning with substantial evidence, *see also Nguyen v. Chater*, 100 F.3d

1462, 1465 (9th Cir. 1996) (urging caution in the use of treatment history against claimants with mental impairments which may affect judgment).

The ALJ opined that, prior to filing his Title XVI application, Plaintiff's treatment was "sporadic," tr. 17, and that, even once Plaintiff began to receive regular treatment, it mainly focused on "school and work objectives," rather than treating or managing his symptoms. Tr. 18. Prior to September 2013, Plaintiff averaged approximately one appointment every two months with his psychiatrist, a routine difficult to describe as "sporadic." *See* tr. 293-333. Nevertheless, even assuming that his treatment qualified as sporadic, this was likely because Plaintiff struggled to understand his impairments, *see, e.g.*, tr. 298, 316, 1107, and one of his primary symptoms was a reluctance to interact with strangers, including healthcare providers, *see* tr. 358-60. Indeed, the post-2013 uptick in treatment was not, as the ALJ speculated, because of Plaintiff's recent Title XVI application, tr. 17, but rather because of his increased access to transportation and other resources, tr. 360. The treatment Plaintiff later received, moreover, consisted of pharmacological interventions designed to keep his conditions stable and frequent counseling to manage the remaining day-to-day symptoms. As the ALJ reasonably concluded elsewhere in his opinion, this combination of psychotropic therapy and counseling was effective at reducing the frequency and impact of Plaintiff's impairments. Nevertheless, since the ALJ offered other valid rationales for rejecting Plaintiff's symptom testimony, the error is harmless and the ALJ's assessment still subject to deference by the Court. *See Batson*, 359 F.3d at 1197.

## II. **Medical Source Opinion.**

Plaintiff next argues that the ALJ improperly discounted portions of the medical opinion of examining psychologist Cheryl Brischetto, Ph.D. Dr. Brischetto described Plaintiff as exhibiting borderline intellectual functioning and assessed a marked limitation in his ability to make

judgments on complex work-related decisions, moderate-to-marked limitation in carrying out complex instructions, and moderate limitation in social interactions. Tr. 1112-13. Dr. Brischetto also assessed a marked limitation in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting, opining further that it was "questionable" whether he could "sustain full-time work and manage his daily living." Tr. 1110. The ALJ credited most of Dr. Brischetto's opinion, but rejected her finding that Plaintiff had a marked limitation in responding to usual work situations and changes in a routine work setting, as well as her opinion that it was questionable whether Plaintiff could work full time, reasoning that Plaintiff's activities of daily living and response to treatment were inconsistent with the assessed limitations.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If, however, the opinion is contradicted by that of another doctor, then the ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ may satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). The ALJ must, in other words, "set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation and quotation marks omitted). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis." *Id.* at 1012-13.

Here, the ALJ offered a clear and convincing reason supported by substantial evidence for assigning little weight to portions of Dr. Brischetto's testimony.[3] An ALJ may properly discount the opinion of an examining medical source based on inconsistencies with a plaintiff's activities of daily living. *See Bayliss*, 427 F.3d at 1216; *cf. also Orn v. Astrue*, 459 F.3d 625, 639 (9th Cir. 2007) (citation omitted). In crediting the majority of Dr. Brischetto's opinion, the ALJ offered a detailed overview of her in-person assessment and found that the proffered limitations were "consistent" with Plaintiff's interactions with Dr. Brischetto, his "ability to persist with breaks for three hours of testing," and the "objective test results." Tr. 21. On the narrower issues of whether Plaintiff could respond to routine workplace changes and manage daily living while working full time, however, the ALJ once again reasoned that Plaintiff's activities of daily living, as corroborated by the objective medical evidence, were inconsistent with the assessed limitations. He noted, for instance, that Plaintiff was "working part-time and responding to usual work situations," as well as preparing to pursue his second college-level degree at a new institution. Tr. 21. He further observed that Plaintiff "independently manages and accesses public transportation to go to school and work" and successfully "move[d] out of his family's home to live independently," a significant change in routine. Tr. 21. "The overall evidence of regularly attending school, doing homework, working part-time, attending counseling sessions, and living independently show that [Plaintiff] could work fulltime and manage daily living." Tr. 21.

The record once again bears out the ALJ's reasoning. During the alleged period of disability, Plaintiff managed work and school commitments totaling approximately 35 hours per week, *see* tr. 47, 49, 61, 944, received consistently positive performance reviews from his manager,

---

[3] The parties disagree as to whether Dr. Brischetto's opinion is contradicted by those of the state agency reviewing psychologists. *Compare* Pl.'s Br. 9 *with* Def.'s Br. 9. Because the ALJ's analysis satisfies the more stringent "clear and convincing" standard, the Court assumes without deciding that Dr. Brischetto's opinion is uncontradicted.

*see, e.g.*, tr. 943, 947, 975, used public transportation to commute to and from work, classes, and appointments, tr. 59-60, 1103, permanently transitioned from his parents' house to a shared apartment, tr. 402, and successfully navigated unplanned changes in work hours and responsibilities without experiencing a manic episode, *see, e.g.*, tr. 965, 971, 988, 996, 1020, 1099. Plaintiff contends that the ALJ overstated the rigor of his daily activities because of the outside support he received, but this support, although potentially allowing for an alternative interpretation of the evidence, does not render the ALJ's interpretation unreasonable and was, in fact, acknowledged by the ALJ, *see* tr. 18-19. Plaintiff also argues that, because Dr. Brischetto considered the countervailing evidence relied upon by the ALJ to discount her opinion, the ALJ effectively substituted his own judgment for that of Dr. Brischetto. It would make little sense, however, to insulate a medical source's opinion from ALJ scrutiny simply because the source acknowledged or was aware of the same inconsistent facts cited by the ALJ. Such a rule would undermine the ALJ's role as "the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008). As such, because the ALJ offered a clear and convincing reason to discount Dr. Brischetto's testimony, and that reasoning was supported by substantial evidence, the ALJ's conclusion is entitled to deference.

### III. Lay Opinion Testimony.

Plaintiff lastly contends that the ALJ improperly discounted the lay opinion testimony of social worker Heather Germundson and employment support specialist Carolyn Frank. In general, lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a plaintiff's ability to work is "competent evidence . . . [that] cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Nevertheless, an ALJ may reject or discount the testimony of a lay witness if she provides "reasons germane to each witness."

*Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citations omitted). An "inconsistency with medical evidence," for example, is a germane reason to discount lay opinion testimony. *Id.* at 511. Similarly, an inconsistency with a plaintiff's daily activities is also a germane reason to discount such testimony. *Dewey v. Colvin*, 650 F. App'x 512, 514-15 (9th Cir. 2016) (citing *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1164 (9th Cir. 2008)). In assessing lay opinion testimony, however, an ALJ need not cite specific portions of the record or "clearly link [her] determination to those reasons" if "arguably germane reasons" for dismissing the testimony are noted "at other points in the decision" and substantial evidence supports the ALJ's decision. *Id.* at 512.

    A. *Opinion of Carolyn Frank*.

Ms. Frank is a Supportive Employment Specialist at LifeWorks Northwest who worked with Plaintiff for a little over one year. Tr. 195. In her report, Ms. Frank found it "doubtful" that Plaintiff could work over 25 hours per week while maintaining the same "pace" and level of "personal care." Tr. 195-96. She emphasized that Plaintiff's part-time position at Office Depot, in which he worked between 17 and 25 hours per week, was tailored to his abilities and that changes in his carefully-managed routine could "give him excessive anxiety which would cause problems with his ability to maintain such work." Tr. 196. Ms. Frank further noted that Plaintiff would have been unable to obtain his part-time position without substantial assistance and that, despite some improvement, Plaintiff remained "severely limited" in his ability to interact with the public. Tr. 195, 197. The ALJ assigned "little weight" to Ms. Frank's opinion, reasoning that Plaintiff's activities of daily living were inconsistent with the assessed limitations. Tr. 19.

    The ALJ offered germane reasons for discounting Ms. Frank's opinion. In an analysis mirroring that of Plaintiff's subjective symptom testimony and the medical source opinion of Dr. Brischetto, the ALJ explained that Ms. Frank's bright-line cap of 25 hours per week was contrary

to Plaintiff's existing 35 hour per week schedule and that the severity of the assessed social limitations could not be reconciled with Plaintiff's ability to "use public transportation, attend classes on campus in the past, and live with roommates." Tr. 19. To the extent Ms. Frank suggested that Plaintiff's ability to work in his current position was solely the result of special accommodations, the ALJ reasoned that the demands of the position still exceeded her assessed limitations and that Plaintiff had previously maintained employment without vocational assistance. Tr. 19. Although the ALJ failed to directly address Ms. Frank's concern that changes in Plaintiff's routine would cause him to decompensate, he properly discounted the same assessed limitation in his discussion of Dr. Brischetto's medical source opinion. *See* tr. 20-21. That discussion was a "germane reason" in support of the ALJ's finding. *Lewis*, 236 F.3d at 512. Finally, to the extent Ms. Frank expressed doubt that Plaintiff would be able to find employment, her opinion was not relevant to the ALJ's disability determination. 42 U.S.C. § 423(d)(2)(A) (requiring that disability be determined "regardless of . . . whether [a claimant] would be hired if he applied for work"). The ALJ's assessment was therefore without error.

    B. *Opinion of Heather Germundson*.

Ms. Germundson is a social worker at LifeWorks Northwest who counseled Plaintiff for slightly less than two years. Tr. 1099. Ms. Germundson testified that Plaintiff had marked limitations in social functioning, marked limitations in concentration, persistence, and pace, and moderate impairment in daily living. Tr. 1099-1100. She explained that there is "no[ ] . . . real trigger" for Plaintiff's manic periods and that his "depressive periods are not as severe now that he is working," but cautioned that working full time would likely cause difficulties similar to those Plaintiff had experience in the past. Tr. 1099-1100. Ultimately, Ms. Germundson concluded that she was "not sure" whether Plaintiff had "the abilities to work full time." Tr. 1100. The ALJ

assigned "some partial weight" to Ms. Germundson's opinion. He found "marked" limitations in social functioning to be inconsistent with the medical evidence and the overall "severity of her opinion" to be "inconsistent with the claimant's daily activities." Tr. 20.

These were germane reasons for discounting Ms. Germundson's opinion. As discussed, inconsistencies with medical evidence and activities of daily living are valid reasons for discounting the testimony of a lay witness. *Lewis*, 236 F.3d at 511; *Dewey*, 650 F. App'x at 514-15. Specifically, the ALJ noted that Plaintiff's bipolar episodes were infrequent and that he was "otherwise largely stable on medication," tr. 20, echoing the more detailed discussion of medical evidence in his analysis of Plaintiff's subjective symptom testimony, *see* tr. 18-19. The ALJ also repeated his observation that the severity of assessed limitations were difficult to reconcile with the fact that Plaintiff "successfully completed college coursework, is working part-time, regularly going to counseling, . . . living with roommates[,] . . . and tak[ing] care of his own personal care needs." Tr. 20. The ALJ's reliance on daily activities, contrary to Plaintiff's suggestion, was directed at all of the limitations assessed by Ms. Germundson, not just that on social functioning. Finally, even if the ALJ failed to address each limitation directly, they were substantially similarly to those alleged by Plaintiff and assessed by Dr. Brischetto, each of which was properly discounted in other portions of the opinion based on Plaintiff's activities of daily living and the treatment record. *See Lewis*, 236 F.3d at 512. The ALJ's assessment was therefore without error.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is free of harmful legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 14th day of January, 2019.

/s/ Michael J. McShane
Michael J. McShane
United States District Judge